O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 08-7259 PSG (Ex) | Date | November 20, 2008 |
|---|---|---|---|
| Title | ExxonMobil Oil Corp. v. Gasprom, Inc. | | |

| Present: | The Honorable Philip S. Gutierrez, United States District Judge | |
|---|---|---|
| Wendy K. Hernandez | Not Present | n/a |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
|---|---|
| Not Present | Not Present |

**Proceedings:**    (In Chambers) Order Denying Plaintiff's Application for a TRO

    Before this Court is Plaintiff's Application for a temporary restraining order.  The Court finds the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; Local R. 7-15.  After considering the moving and opposing papers, the Court hereby DENIES the application.

I.    Background

    A.    Relationship Between the Parties

    Gasprom Inc. ("Defendant") owns a service station located in Thousand Oaks, California (the "Service Station" or "Station").  Defendant operates the Service Station pursuant to a written franchise agreement with Plaintiff.  The franchise agreement is classified as "Company Owned Dealer Operated" ("CODO"), meaning that Plaintiff owns the Station's assets, including the gasoline pumps and dispensers, underground storage tanks, and the building ("the Leased Equipment"), which, in turn, are leased to Defendant.  According to Plaintiff, the equipment lease, which is contained in the franchise agreement, requires Defendant to obtain Plaintiff's written consent prior to making any additions or alterations to the Leased Equipment.  *TRO App.* 7:27-8:1.

    In 2005-2006, Plaintiff and Defendant engaged in litigation involving certain lease and franchise issues in *ExxonMobile Corp. v. Gasprom Inc.*, No. CV 05-3065 GHK (Ex).  That litigation ended with a settlement executed in October 2006.  *Compl.* ¶ 11.  The settlement agreement contained the following provision:

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-7259 PSG (Ex) | Date | November 20, 2008 |
|---|---|---|---|
| Title | ExxonMobil Oil Corp. v. Gasprom, Inc. | | |

> The Parties acknowledge that Gasprom desires to make certain alterations and improvements to the Service Station located on the Property, . . . and the Parties agree that any such alterations and improvements . . . will be subject to the standard terms, conditions, and approvals otherwise applicable to ExxonMobil franchisees in respect of such matters.

Plaintiff contends that this provision referred to, among other things, Defendant's desire to put a car wash on the Service Station property. *Compl.* ¶ 12.

According to Plaintiff, in order for an ExxonMobil franchisee to undertake a construction project, it must submit an application to Plaintiff's Dealer Financed Improvement Program ("DFIP"), receive approval, and follow a number of other steps required by Plaintiff. *Watson Decl.* ¶ 10. The purpose of the DFIP is to provide Plaintiff with notice of the franchisee's desired changes, to allow Plaintiff to coordinate the permitting process, to ensure that the intended changes do not conflict with any modifications Plaintiff may be required to perform under local, state, or federal regulations, and to allow Plaintiff to control any major construction at the site to prevent environmental contamination. *Compl.* ¶ 13.

      B.      <u>Relevant Environmental Regulations</u>

In 2001, regulations requiring all gasoline dispensing facilities with underground storage tanks to be equipped with Enhanced Vapor Recovery ("EVR") systems became law in California. These regulations are designed to reduce emissions of gasoline vapors, which contribute to the formation of smog. In 2003, the EVR regulations were amended to require all gasoline dispensing facilities to be equipped with a certified Phase II EVR system by April 1, 2009. Failure to comply with this deadline may result in closure of the non-complying facility, as well as additional penalties. In order to bring the Service Station into compliance with the amended EVR regulations, Plaintiff intends to install "the Healy system," which essentially consists of a tank that monitors vapor recovery at the site and maintains the site within strict operating parameters. *Sistos Decl.* ¶¶ 5-9.

      C.      <u>The Current Dispute</u>

The current dispute between the parties centers on Defendant's plan to add a car wash and to make other changes to the Service Station. According to Plaintiff, Defendant never completed a DFIP application for these modifications. *Compl.* ¶ 22. In March or

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-7259 PSG (Ex) | Date | November 20, 2008 |
|---|---|---|---|
| Title | ExxonMobil Oil Corp. v. Gasprom, Inc. | | |

early April 2008, a sign was posted at the Service Station indicating that Defendant had applied for a permit with the City of Thousand Oaks (the "City"). *Id.* ¶ 23. Around the same time, the City rejected Plaintiff's permit application to install the Healy system at the Service Station. *Id.* ¶ 24. Allegedly, Plaintiff's application was rejected because the site map that it submitted did not match the site map that the City had recently approved pursuant to Defendant's permit application to construct a car wash. *Id.* The proposed placement of the Healy system is purportedly in conflict with the proposed placement of the car wash because the Healy tank would block the flow of cars exiting the car wash. *Id.* ¶ 28. According to Plaintiff, this is why the City denied its permit to install the Healy system. *Id.*

Plaintiff contends that if it is not able to install the Healy system, the Service Station will be shut down, and Plaintiff may be subject to significant penalties. Additionally, Plaintiff alleges that Defendant's plans include the removal and/or relocation of some of the Leased Equipment, a project that Defendant is not permitted to undertake under the terms of the franchise agreement. *Id.* ¶ 31. Plaintiff claims that Defendant's proposed changes create a "substantial risk of environmental contamination," and therefore Plaintiff must handle the construction. *Id.* Defendant has already obtained a City permit to proceed with these projects, which Plaintiff would not have approved under the DFIP. *Id.* ¶ 32.

On October 31, 2008, Plaintiff sued Defendant on a breach of contract theory. On November 6, 2008, it filed the present application for a temporary restraining order ("TRO"). Plaintiff hereby requests that the Court:

(1) restrain Defendant from proceeding with construction project for which it has obtained permits;

(2) restrain Defendant from undertaking construction of any kind or modifying, removing, or relocating the Leased Equipment; and

(3) order Defendant to withdraw its permit application, notify all applicable agencies that it does not intend to proceed with the project, and direct all agencies to classify its permit application as null and void.

II.  Legal Standard

In order to secure a TRO, the moving party must demonstrate either: (1) a combination of probable success on the merits and a significant threat of irreparable harm or

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-7259 PSG (Ex) | Date | November 20, 2008 |
|---|---|---|---|
| Title | ExxonMobil Oil Corp. v. Gasprom, Inc. | | |

(2) that serious questions are raised as to the merits and that the balance of hardships tips in its favor. *Dept. Of Parks & Rec. For State of Cal. v. Bazaar Del Mundo, Inc.*, 448 F.3d 1118, 1123 (9th Cir. 2006). "[T]hese two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Id.* In any circumstance, the plaintiff must demonstrate a significant threat of irreparable injury. *Big Country Foods, Inc. v. Bd. of Educ. of Anchorage Sch. Dist.*, 868 F.2d 1085, 1088 (9th Cir. 1989). Preliminary injunctive relief "is an 'extraordinary remedy' for which the need must be 'clear and unequivocal.'" *Puricle, Inc. v. Church & Dwight Co., Inc.*, 568 F. Supp. 2d 1144, 1147 (C.D. Cal. 2008) (citing *Shelton v. Nat'l Collegiate Athletic Ass'n*, 539 F.2d 1197, 1199 (9th Cir. 1976)).

III.   Discussion

     Plaintiff contends that absent a TRO, it will be unable to bring the Service Station into compliance with EVR regulations by the April 2009 deadline. According to Plaintiff, this will lead to closure of the Service Station and subject Plaintiff to additional unspecified penalties. *TRO App*. 15:8-14. However, these are economic injuries that would be compensable with monetary damages through the regular course of litigation. This type of injury is not irreparable and does not warrant preliminary injunctive relief. *See Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980) (holding that the threat of lost revenues did not constitute irreparable harm).

     Plaintiff also maintains that Defendant's project, if allowed to proceed, may cause environmental contamination. However, Plaintiff has submitted no evidence whatsoever to substantiate its contention that Defendant's plans pose a threat of environmental contamination. These speculative allegations are insufficient to justify a TRO. *See Carribean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988); *see also Amoco Prod. Co. v. Vill. of Gambell, Ala.*, 480 U.S. 531, 545, 107 S. Ct. 1396, 94 L. Ed. 2d 542 (1987) (holding that the possibility of environmental harm did not favor the issuance of a preliminary injunction where that harm was "not at all probable"). Additionally, Plaintiff has not shown that the risk of environmental harm from the project, if any, is immediate, such that extraordinary relief is necessary.

     Furthermore, Plaintiff's delay in seeking a TRO implies a lack of urgency and irreparable harm. *Miller v. Cal. Pac. Med. Ctr.*, 991 F.2d 536, 543 (9th Cir. 1993) (citing *Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc.*, 762 F.2d 1374, 1377 (9th Cir. 1985)). By its own admission, Plaintiff learned that Defendant had applied for a City permit in

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-7259 PSG (Ex) | Date | November 20, 2008 |
|---|---|---|---|
| Title | ExxonMobil Oil Corp. v. Gasprom, Inc. | | |

March or early April 2008. It claims that it did not know what Defendant's plans were at that time. According to Plaintiff, it first learned on October 13, 2008 that the City had approved plans for a car wash and an expanded store at the Service Station. *Id.* ¶ 12. However, in a declaration, Dave Watson, the ExxonMobile Territory Manager responsible for the area where the Service Station is located, stated that he "knew from the outset of 2007 that Gasprom desired and intended to put a car wash on the Service Station property." *Watson Decl.* ¶ 9. Furthermore, the evidence indicates that Plaintiff learned in April 2008 that Defendant had applied for a City permit to install a car wash. *See Watson Decl.* ¶ 14; Ex. D. In an email to Samir Chahayed, Defendant's "key individual," Watson wrote, "ExxonMobil has never received a DFIP application from Gasprom, but we have learned that they have submitted a permit application to the City of Thousand Oaks for a car wash." *Id.* Thus, Plaintiff was on notice at least seven months ago that Defendant planned to construct a car wash on the Station premises without first obtaining Plaintiff's approval and had successfully obtained a City permit to do so. Additionally, the April email from Watson indicated that the City "will not allow [Plaintiff] to file for a permit [to install the Healy system] because of the pending Gasprom car wash application." *Watson Decl.*, Ex. D. Accordingly, Plaintiff was aware of a conflict between its plans to install the Healy system and Defendant's plans to build a car wash as early as April 2008, yet it did not seek injunctive relief until November.

Defendant also had knowledge of the April 1, 2009 deadline for compliance with the amended EVR regulations long before it filed this TRO application. The amended regulations took effect in 2003, and Plaintiff has since installed Healy systems at 220 of its service stations. *Sistos Decl.* ¶¶ 6-8. Indeed, in the April 8, 2008 email to Chahayed, Watson stated: "It is imperative that the EVR project go forward in order to prevent shut down of the site for non-compliance." *Watson Decl.*, Ex. D. Therefore, while Plaintiff attempts to paint a picture of impending doom brought on by Defendant's conduct, if Plaintiff is unable to meet the April 2009 deadline, its own procrastination will be at least equally to blame.[1]

For the foregoing reasons, the Court finds that Plaintiff has failed to establish a threat

---

[1] According to Plaintiff, the current franchise agreement covers a period which began September 1, 2006. *Compl.* ¶ 7. Thus, Plaintiff has had at least two years to install the Healy system and has not offered any explanation its delay in seeking a City permit for the construction.

**O**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 08-7259 PSG (Ex) | Date | November 20, 2008 |
|---|---|---|---|
| Title | ExxonMobil Oil Corp. v. Gasprom, Inc. | | |

of irreparable injury.  Because this a prerequisite to issuance of a TRO, the Court need not decide whether Plaintiff is likely to succeed on the merits of its claims.  *Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc.*, 762 F.2d 1374, 1376 (9th Cir. 1985).

IV.     Conclusion

      For the foregoing reasons, Plaintiff's Application for a TRO is DENIED.  However, the Court grants Plaintiff's request to schedule a hearing for a preliminary injunction on the matter.  The Court sets a hearing date for a preliminary injunction on **December 15, 2008 at 1:30pm.**  The Court will treat Plaintiff's ex parte application for a TRO as Plaintiff's moving papers for a preliminary injunction.  Opposition papers should be filed no later than December 2, 2008.  Plaintiff may file a reply brief by December 8, 2008.

**IT IS SO ORDERED.**