E-FILED 03/26/10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EXXONMOBIL OIL CORPORATION,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>GASPROM INC., and DOES 1 through 50, inclusive,<br><br>　　　　Defendants.<br><br>AND RELATED COUNTERCLAIM. | Case No. CV-08-07259 PSG (Ex)<br><br>Hon. Philip S. Gutierrez<br><br>**[REVISED PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW**<br><br>Trial Date:　March 9, 2010<br>Time:　　　 9:30 a.m.<br>Ctrm:　　　 790 |

This civil action having come on regularly for trial to the Court, a jury having been waived, commencing on March 9 and concluding on March 10, and the Court having considered all evidence presented and argument of counsel, the Court now makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. Plaintiff ExxonMobil Oil Corporation ("ExxonMobil") is a corporation that is organized and exists under the laws of the State of New York, with its principal place of business in Irving, Texas. [Final Pretrial Conference Order ("PTCO"), Section 2, Admitted Facts re Jurisdiction and Venue, 2:18-3:2.]

2. Defendant Gasprom, Inc. ("Gasprom") is a corporation that is organized and exists under the laws of the State of California with its principal place of business at 5990 N. Sepulveda Boulevard, Suite 110, Van Nuys, California 91411. [PTCO, Section 2, Admitted Facts re Jurisdiction and Venue, 2:18-3:2.]

3. Gasprom leases real property improved with a service station located at 3995 E. Thousand Oaks Boulevard, Westlake Village, California, to ExxonMobil pursuant to a Lease Agreement ("Marketing Premises"). [PTCO, Admitted Fact No. 1.]

4. ExxonMobil subleases the Marketing Premises back to Gasprom and Gasprom operates said premises as an ExxonMobil's franchisee pursuant to a PMPA Franchise Agreement between the parties effective May 14, 2004 the term of which was extended by the parties' Settlement Agreement. [PTCO, Admitted Fact No. 2.]

5. The Marketing Premises are located in this district and Gasprom resides in this district. In addition, a substantial part of the events, acts and omissions giving rise to this action occurred in this district. [PTCO, Section 2, Admitted Facts re Jurisdiction and Venue, 2:18-3:2.]

6. The amount in controversy exceeds $75,000, exclusive of costs and attorneys fees. [PTCO, Section 2, Admitted Facts re Jurisdiction and Venue,

2:18-3:2, Testimony of Ena Williams and Mario Sistos re value and importance of ExxonMobil's control of fore court.]

7. All of the improvements and equipment at the Marketing Premises, including the improvements that are the subject of Gasprom's renovation project discussed below, are owned by ExxonMobil and leased to Gasprom under the CODO Lease portion of the parties' Franchise Agreement, including Article 9 entitled Equipment Lease. [PTCO, Admitted Fact No. 9, Testimony of David Watson; Trial Exhibit No. 1, CODO Lease Provisions, Section 1.1, Article 9; and, CODO Lease Schedule.]

8. The CODO and Equipment Lease provisions of the parties' Franchise Agreement provides that Gasprom may not alter or improve any part of the marketing premises without ExxonMobil's prior written approval. [PTCO, Admitted Fact No. 10, Testimony of David Watson; Trial Exhibit No. 1, CODO Lease Provisions, Section 9.2.]

9. The CODO and Equipment Lease also provides that Gasprom: (1) shall make no additions or alterations to the leased equipment without ExxonMobil's prior written approval; (2) shall not do or permit to be done anything prejudicial to ExxonMobil's title to the leased equipment; and, (3) shall not remove the leased equipment or deliver it to anyone but ExxonMobil or ExxonMobil's designee. [PTCO, Admitted Fact No. 11, Testimony of David Watson; Trial Exhibit 1, CODO Lease Provisions, Section 9.2.]

10. Gasprom and ExxonMobil had disputes over the Lease Agreement and Franchise Agreement that led to the parties filing cross-actions against each other in April 2005 ("Prior Litigation"). [PTCO, Admitted Fact No. 3.]

11. Pursuant to mediation, the parties settled the Prior Litigation by entering into a Settlement Agreement in December 2006 which, among other things: (1) dismissed the Prior Litigation; (2) confirmed that the Lease Agreement remained in full force and effect except for some amendments not relevant to this case; and, (3)

reinstated the Franchise Agreement for a new three year term from September 1, 2006 to August 31, 2009 ("Settlement Agreement").  [PTCO, Admitted Fact Nos. 4 and 5; Trial Exhibit No. 4; Testimony of Ena Williams and Samuil Preys.]

12. Effective September 1, 2009, the parties entered into a new three year Franchise Agreement containing the same terms and provisions with respect to the improvements and equipment at the Marketing Premises.  [PTCO, admitted Fact No. 18, Testimony of David Watson; Trial Exhibit No. 77.]

13. Under the Settlement Agreement ExxonMobil also reimbursed Gasprom approximately $76,000 for fuel dispensers and related equipment that Gasprom had purchased and installed at the Marketing Premises during the period when the Prior Litigation was ongoing.  [PTCO, Admitted Fact No. 6.]

14. The Settlement Agreement further states that Gasprom desires to make certain alterations and improvements to the marketing premises.  However, the Settlement Agreement also provides that any such alterations and improvements will be subject to the standard terms, conditions, and approvals otherwise applicable to ExxonMobil franchisees in respect of such matters.  [PTCO, Admitted Fact No. 7.]

15. Prior to entering into the Settlement Agreement, Gasprom submitted to ExxonMobil for preliminary review two schematic drawings of its plans to renovate the Marketing Premises by adding a drive-through car wash, eliminating the service bays and expanding the convenience store.  [PTCO, Stipulated Fact No. 1; Trial Exhibit No. 2, Testimony of Ena Williams and Samuil Preys.]

16. The foregoing improvements involved the so-called "back court" of the Marketing Premises, which refers to the area occupied by the service station office, convenience store and repair facilities.  By comparison, the area of the Marketing Premises occupied by the fuel islands, canopies, dispensers, underground storage tanks, and related piping and environmental equipment is known as the "fore court."  [Testimony of David Watson, Mario Sistos and Ena Williams.]

17. An ExxonMobil employee, working at the Company's offices in

Fairfax, Virginia, reviewed the schematic drawings and, on October 6, 2006 prepared an e-mail setting forth his suggested changes with respect to the proposed car wash and convenience store.  [Testimony of Ena Williams; Trial Exhibit No. 3.]

18. Prior to submitting the schematic drawings to ExxonMobil, Gasprom had submitted the plans and drawings of its proposed renovation project to local permitting authorities for review.  As a result, the permitting authorities advised Gasprom that in order to construct the car wash and expand the convenience store, Gasprom would be required to increase the number of parking spaces and relocate the spaces to the front and side of the convenience store.  [Testimony of Samuil Preys.]

19. The need for such additional parking intruded into the area occupied by one of the fueling islands and required the following modifications to the fore court: (1) removal of two motor fuel dispensers; (2) relocation of two other dispensers; (3) reconfiguration of one of the fuel islands and overhead canopy; and, (4) removal and reinstallation of piping and environmental equipment associated with the foregoing dispensing equipment.  [Testimony of Samuil Preys.]

20. Gasprom did not advise ExxonMobil about any of the following: (1) its plans had already been submitted to the local permitting authorities for review; (2) the local authorities required additional parking that would impact the fore court; and, (3) such impact would require the elimination of two of ExxonMobil's fuel dispensers and the other substantial modifications to ExxonMobil's property described above.  [Testimony of Samuil Preys and Ena Williams.]

21. On October 20, 2006 ExxonMobil Area Manager Ena Williams signed a document entitled Memorandum of Preliminary Review which provided as follows:

> Upon completion of initial review of architectural site plans for the property commonly known as 3995 E. Thousand Oaks Boulevard, Thousand Oaks, California, attached hereto as Exhibit A, subject to full implementation of changes

suggested in October 9, 2006 communication, attached hereto as Exhibit B, and full compliance with the parameters of Exxon Mobil Dealer Financed Improvement Program, ExxonMobil has no objection to initiation of State, City and Municipal permit entitlement process. [PTCO, Stipulated Fact No. 1; Trial Exhibit No. 2; Testimony of Ena Williams.]

22. Exhibit A to the Memorandum of Preliminary Review consisted of the two schematic drawings that Gasprom had submitted to ExxonMobil and Exhibit B to such Memorandum was the e-mail from the ExxonMobil employee in Fairfax, Virginia setting forth ExxonMobil's suggested changes with respect to the car wash and the convenience store expansion. [Trial Exhibit No. 2; Testimony of Ena Williams.]

23. Neither Ena Williams nor any other ExxonMobil employee involved in the settlement of the Prior Litigation or the preliminary review of Gasprom's renovation project understood that the project involved the elimination of two of ExxonMobil's fuel dispensers and the other substantial modifications to ExxonMobil's equipment and improvements in the fore court of the Marketing Premises. [Testimony of Ena Williams.]

24. The Exxon Mobil Dealer Financed Improvement Program ("DFIP") was an ExxonMobil program for dealers, such as Gasprom, who leased their marketing premises from ExxonMobil to make improvements to their marketing premises at their cost. The DFIP applied to improvements in the back court of the marketing premises only and did not involve improvements to the fore court where ExxonMobil owned the dispensers, storage tanks, lines and related environmental equipment. [Testimony of David Watson and Ena Williams; Trial Exhibit No. 9; PTCO, Stipulated Fact No. 4.]

25. Because Gasprom was required to eliminate and relocate

dispensers, islands, canopies, piping and related environmental equipment in the fore court of the station in order to allow for additional parking required by the local authorities, Gasprom's renovation project could not "fully comply with the parameters of the [DFIP]" which was an express condition of Ena Williams' Memorandum of Preliminary Review. [Trial Exhibit No. 2; Trial Testimony of David Watson and Ena Williams.]

26.   Around May, 2007, ExxonMobil Territory Manager David Watson learned that Gasprom was contemplating a renovation project involving the construction of a car wash. [Testimony of David Watson.]

27.   At the time Mr. Watson learned about Gasprom's proposed renovation project, Watson gave the Gasprom key dealer employee, Samir Chahayad, a package of materials describing the DFIP program including a DFIP application form. Watson advised Chahayad that Gasprom should review the materials and submit the completed application which is the necessary to initiate the DFIP process. [PTCO, Stipulated Fact No. 2: Testimony of David Watson; Trial Exhibit No. 9.]

28.   On or about May 17, 2007 Gasprom filed a Minor Modification Application with the City of Thousand Oaks for a permit to expand and renovate the convenience store, remove the three bay automotive garage and construct a drive-through car wash. Gasprom's proposed renovation project included, among other modifications the following changes to the marketing premises: (1) removal of two motor fuel dispensers; (2) relocation of two other dispensers; (3) reconfiguration of one of the fuel islands and overhead canopy; and, (4) removal and reinstallation of piping and environmental equipment associated with the dispensing equipment. [PTCO, Admitted Fact No. 8; Testimony of Samuil Preys; Trial Exhibit No. 12.]

29.   Watson gave Chahayad the DFIP package, including the application form, at or before Gasprom filed its application for a minor modification use permit with the City of Thousand Oaks. [Trial Exhibit No. 12, Testimony of Samuil Preys.]

30. Gasprom ignored Watson's request and did not submit its DFIP application to ExxonMobil until October 2008, months after the present dispute had arisen and on the eve of the commencement of this civil action. [Testimony of David Watson, Trial Exhibit No. 48.]

31. Had Gasprom filled out and submitted the application to ExxonMobil in a timely fashion as Watson had requested, ExxonMobil would have discovered that Gasprom's proposed renovation project involved substantial modifications to ExxonMobil's equipment and facilities in the fore court and was, thus, not permitted under the DFIP program. [PTCO, Stipulated Fact No. 3; Testimony of David Watson and Trial Exhibit No. 12.]

32. Gasprom obtained its Minor Modification Use Permit on January 30, 2008. [PTCO, Admitted Fact No. 12; Testimony of Samuil Preys; Trial Exhibit No. 26.]

33. ExxonMobil did not grant Gasprom prior written approval to eliminate and relocate dispensers and make substantial changes to ExxonMobil's facilities and equipment in the fore court of the Marketing Premises. Nor did ExxonMobil give Gasprom prior written approval to apply for permits to pursue a project that included such changes to the fore court. [Testimony of Ena Williams.]

34. Specifically, in executing the Memorandum of Preliminary Review, ExxonMobil believed that the proposed project involved only the construction of a car wash and expansion of convenience store, all in the back court. Gasprom did not advise ExxonMobil, and ExxonMobil did not know that Gasprom also intended to make substantial changes to the equipment and facilities in the fore court. [Testimony of Ena Williams and Samuil Preys.]

35. The California Air Resources Board had issued regulations requiring the installation of an Enhanced Vapor Recovery system (hereinafter referred to as "EVR") at all service stations in the state. [PTCO, Admitted Fact No. 13.]

36. Under the parties' sublease, ExxonMobil was obligated to repair

7

and replace various equipment including but not limited to the vapor recovery systems. Gasprom was obligated to cooperate with ExxonMobil in connection with repairing and replacing such vapor recovery equipment. [PTCO, Admitted Fact No. 14.]

37. In April, 2008 ExxonMobil applied to the City of Thousand Oaks for permits necessary to install an EVR System, known as a Healy System, on the Marketing Premises pursuant to the mandate contained in regulations of the California Air Resources Board. [PTCO, Admitted Fact 15; Testimony of Mario Sistos.]

38. ExxonMobil's EVR permit application for the Healy System was denied by the City because the application was based on plans and drawings of the existing service station facilities and equipment which conflicted with the plans and drawings that the City had approved in connection with issuing Gasprom a minor modification use permit. [PTCO, Admitted Fact Nos. 16 and 17; Testimony of Mario Sistos; Trial Exhibit Nos. 29, 30, 45.]

39. In April 2009, ExxonMobil completed the EVR upgrade at the Marketing Premises. [Testimony of Andre Reed.]

40. As a consequence of the conflict between the existing plans and drawings of the Marketing Premises on which ExxonMobil had based its EVR permit application and the plans and drawings on which Gasprom had obtained its minor modification use permit, ExxonMobil was required to redesign its EVR project and resubmit its EVR application. ExxonMobil incurred $ 3,700 in costs to redesign the EVR system for the Marketing Premises which it would not have incurred but for the conflict in plans and drawings. [Testimony of Andre Reed.]

41. ExxonMobil has also requested as damages the sum of $22,500 representing the cost of an electrical power source at the Veeder Root Cannister System that it eventually installed on the Marketing Premises. ExxonMobil contends that it would not have incurred these costs but for Gasprom having obtained a use permit based on plans that conflicted with ExxonMobil's plans for the original EVR

installation. [Testimony of Andre Reed.]

42. It is not reasonably certain that the installation of the Veeder Root System cost ExxonMobil more than what the installation of the Healy System would have cost ExxonMobil. [Testimony of Andre Reed.]

43. Notwithstanding ExxonMobil's objections to Gasprom's renovation project, Gasprom refused to withdraw its minor modification use permit or terminate the project. [Testimony of David Watson; Trial Exhibit No. 32.]

44. As of October 2008, Gasprom had completed or nearly completed its plan check and had filed applications for building permits for the project. [Testimony of Samuil Preys; Trial Exhibit Nos. 39, 40.]

45. But for ExxonMobil having commenced this civil action, Gasprom would have proceeded with the construction of its renovation project to completion. [Testimony of Samuil Preys.]

46. ExxonMobil has a policy to retain control of the repair, maintenance and replacement of equipment in the fore court in order to manage the environmental risk associated with motor fuel storage tanks, lines and dispensing equipment. [Testimony of Ena Williams and Mario Sistos.]

47. It is extremely difficult, if not impossible, to calculate with any degree of reasonable certainty the damages that ExxonMobil will incur if Gasprom is permitted to proceed with its renovation project that includes removing two of ExxonMobil's fuel dispensers, relocating two others and making the other substantial modifications to the fore court of the Marketing Premises because of the following:

   a. It is impossible to calculate the lost volume of gasoline sales as a result of eliminating one or more dispensers;

   b. It is impossible to quantify the environmental risk associated with Gasprom assuming control of the replacement of dispensers and associated piping and environmental equipment; and,

   c. The Marketing Premises is unique improved real property.

1  [Testimony of Ena Williams and Mario Sistos; Trial Exhibit No. 1.]

2  48. ExxonMobil has performed all the terms and conditions on its part to perform under the parties' Franchise Agreement and Settlement Agreement. [Testimony of David Watson and Andre Reed.]

49. If and to the extent that any foregoing Finding of Fact is actually a Conclusion of Law, then it shall be deemed a Conclusion of Law.

## CONCLUSIONS OF LAW

1. There is complete diversity between the plaintiff and defendant and the amount in controversy exceeds $75,000 exclusive of costs and attorneys fees. The Court has original subject matter jurisdiction under 28 U.S.C. Section 1332.

2. Venue of this action is proper in the Central District of California pursuant to 28 U.S.C. Section 1391(b).

3. Gasprom breached the Franchise Agreement, including the sublease and Equipment Lease provisions thereof, when it obtained, without ExxonMobil's prior written approval, a Minor Modification Use Permit that would eliminate ExxonMobil's dispensers and modify other ExxonMobil equipment and improvements in the fore court of the Marketing Premises.

4. Gasprom also breached the Franchise Agreement when it failed to comply with the DFIP, which is the program by which lessee franchised dealers, such as Gasprom, were to remodel or renovate the back court of their marketing premises.

5. Gasprom threatened to further breach the Franchise Agreement when it refused to withdraw its Minor Modification Use Permit and terminate its renovation project advising ExxonMobil instead that it intended to continue with the project.

6. Gasprom's foregoing actual and anticipatory breach of the Franchise Agreement also constitutes a breach of the Settlement Agreement because the Settlement Agreement provided that Gasprom's alterations and improvements will be subject to the standard terms, conditions, and approvals otherwise applicable to

ExxonMobil franchisees in respect of such matters which included the terms and conditions of the Franchise Agreement and the DFIP.

7. ExxonMobil has been harmed by Gasprom's breach when ExxonMobil was required to redesign its EVR system to accommodate the plans and drawings that Gasprom had filed with the City of Thousand Oaks in order to obtain its minor modification use permit.

8. As a result of such harm, ExxonMobil has incurred losses for which it is entitled to damages in the sum of $ 3,700.

9. ExxonMobil is not entitled to recover damages in the requested sum of $22,500 as the additional cost of installing the Veeder Root Cansister system because such damages are speculative and uncertain.

10. ExxonMobil does not have an adequate remedy at law in the event that Gasprom proceeds, as it intends, with its current renovation project pursuant to the Minor Modification Use Permit.

11. ExxonMobil is entitled to a permanent injunction restraining Gasprom from proceeding under the Minor Modification Use Permit and proceeding with its renovation project involving the renovation of the fore court.

12. As the prevailing party, ExxonMobil is entitled to recover its costs of suit and, the Court will consider a motion for recovery of attorneys fees that complies with Local Rules 7-3 and 54-12.

13. If and to the extent that any foregoing Conclusion of Law is actually a Finding of Fact, then it shall be deemed a Finding of Fact.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

Let judgment be entered according to these Findings of Fact and Conclusions of Law and the Court's February 12, 2010 Minute Order Granting ExxonMobil's Motion for Summary Judgment on Counterclaims.

Dated: 03-26-10

_____
Phillip S. Gutierrez
United States District Judge

Submitted by:

Dated: March 24, 2010

JOHN M. ROCHEFORT
MARTHA S. DOTY
**ALSTON & BIRD LLP**

CRAIG J. WHITNEY
**EXXON MOBIL CORPORATION**

**/s/ John M. Rochefort**
_____
John M. Rochefort
Attorneys for Plaintiff/Counterdefendant
EXXONMOBIL OIL CORPORATION